IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DEMETRIUS RAMON AKKARD                                                                PLAINTIFF

v.                                            CASE NO.  4:07-4078

DOLLIE ANN-MARIE SIMMONS
and
SGT.  JASON McDONALD                                                               DEFENDANTS

### MEMORANDUM OPINION

Demetrius Ramon Akkard (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on August 16, 2007.  (Doc. 1).  Plaintiff's Complaint was filed *in forma pauperis* (IFP) and certified to proceed on October 3, 2007.  (Doc.  4).  On January 29, 2009, a bench trial was held before the Court.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc.  12).  Pursuant to this authority, the Court issues this Opinion.

The remaining claim before the Court at the time of the bench trial was Plaintiff's allegations he informed the Defendants at the time of booking that he needed protective custody.  Plaintiff states this information was ignored by Defendants and they put him into the general population, where he was injured by other inmates.

**I. Background & Evidence Presented**

At the bench trial, the Court heard an opening statement from the Plaintiff, followed by the testimony of witnesses, and closing statements from all parties.  The testimony of the witnesses is summarized in first person narrative below.

-1-

*Plaintiff's Testimony (Demetrius Akkard)*

My name is Demetrius Ramon Akkard. When I was in booking, I asked to be placed in protective custody. Now I am unable to do physical acts due to the injuries I suffered from other inmates.

I am incarcerated in the Arkansas Department of Corrections. I was arrested in the early morning of March 2, 2007. While I was in the interrogation room I told the officer I needed protective custody. The officer said she would tell the transport officer. I believe Jason Jones was the first person I told at Miller County. I also told Ms. Simmons that I needed protective custody. I let them all know I needed protective custody, because I was involved in a homicide and knew some of the people [incarcerated] there.

I was on the second tier, laying in bed when other inmates pulled me off the bunk. I woke up on the floor. I was then thrown back onto the floor. I believe part of an ice cooler and a stick were used by the inmates to harm me. I utilized the call button to summon help. About two minutes later, deputies arrived to help me. Two officers responded, plus an escort.

As a result of the altercation, I have lost hearing on my left side, and have some shoulder injuries as well. I also now must take migraine medications to control my headaches. The incident resulted in multiple contusions, swollen eyes, hands, and head, bruised lips, and a swollen face on the right side. (*Plaintiff's exhibits 1, 2, 3 are photos documenting these injuries. These photos were taken in intake area after the incident.*)

I am currently incarcerated on the charges I was arrested for in Miller County. Etoyi Hall was also arrested with me at that time. I knew there were gang members in the jail from the newspaper

and seeing their names in the newspaper. Mr. Hall also knew of the homicide and the threat to me in Miller County. I did not know the names of those who were a threat. I think there were about fifteen (15) inmates involved in the assault. There was one person I knew. I was previously incarcerated in Miller County in 2006, but not for the homicide.

Etoyi Hall was there when the altercation happened and also told booking I needed protective custody. In all I told five (5) people of my need for protective custody. Two people were police officers, and three were jailers. I was interrogated before by persons other than the defendants, and I never saw the officers tell the defendants.

I remember Defendant Simmons, I do not remember seeing Defendant Jason McDonald at the time I requested protective custody. Ms. Simmons was there at the time of booking, when I requested protective custody. Inmates Travon Peoples and Deondre Walker were present at the time of my book in.

I knew the "ringleader" of those who injured me from the newspaper. McDonald and someone I don't know responded when I called for help after the altercation. I don't remember what was said to the jailers who responded.

I bonded out March 3, 2007, was in a Texas prison, and then returned to Miller County. Upon arrival for that third time in Miller County, I was told to be put in protective custody.

The third time I was incarcerated in Miller County [not the time in question], I was asked and was allowed to be a 309 [trustee] under certain circumstances. I was put in with the trustees. Trustees are inmates who perform certain jobs at will and are always attended when out working. When I was returned to Miller County, the people who had assaulted me were no longer there. I was willing to be a trustee because I had spoken with the sheriff and knew I would be protected.

After the altercation at issue, three officers responded when I pushed the button for help. Two of the officers were white and one was black. I don't remember talking with the person who escorted me away from the general population. Neither of the Defendants escorted me to the back after the incident.

As a trustee, I did not have the privileges that others had, mine were very limited. I had protection once I was out of the cell. I cleaned the pod and would fix items in the jail, I did not leave the pod. The jailers had checked backgrounds and I had no problems with those inmates, I felt safe there [upon the third incarceration at Miller County].

*Travon Peoples*

My name is Travon Peoples and I am eighteen (18) years of age. I am incarcerated in the Arkansas Department of Corrections, currently. I was incarcerated in Miller County on the date of the incident at issue. I remember Plaintiff being booked into Miller County. I saw the officers, and heard Plaintiff tell Dollie Ann-Marie Simmons that he needed protective custody. I knew Plaintiff had enemies due to a prior incident and I told officers about Plaintiff's need for protective custody.

I knew, or had heard Plaintiff's name. I knew he was from Texas. I was in the holding cell while in Miller County, due to my age. I had a conversation with Plaintiff while in the holding cell.

I knew the guys who jumped Plaintiff and I heard him tell Dollie Ann-Marie Simmons and Officer Dahl about the need for Plaintiff to have protective custody. I also heard some inmates talking about Plaintiff and that he had a murder charge. I specifically told Dollie Ann-Marie Simmons that Plaintiff needed to be in protective custody.

*Penny Nichols*

My name is Penny Nichols. I was the nurse at the Miller County Jail at the time of the incident. When I saw Plaintiff his nose was bleeding, his eye was swollen, and there was blood

coming from his ear. As this was an altercation where there was contact with his head, I stated he should see a doctor. I told the officers to take Plaintiff to the Emergency Room. My role at Miller County was as an LPN - a licensed practical nurse. Typically we take individuals to the ER in a situation such as Plaintiff's. I don't recall the date, but I did give Plaintiff treatment in the intake area of the jail.

### *Dollie Ann-Marie Simmons*

I was a correctional officer at the Miller County Detention Center at the time of the incident. I do booking-in of inmates, and some cell checks. I have had training on booking, release, and cell checks. I booked Plaintiff into the facility. Defendants exhibits 1-5 show (1) the booking detail, (2) arrest report, (3) arrest and booking report, (4) incident report, (5) incident report. There is a standard sheet for inmate booking and a yellow information card with holds. The arrest and booking report (Exhibit 3) were produced while I booked Plaintiff. The booking officer is listed as officer "069" that is Sgt. McDonald. I was using his code so I could save files. I did not have a number designated yet, because I was new.

If an inmate requested protective custody/administrative segregation, it would be noted on the yellow card. Plaintiff never asked me to be put in administrative segregation/protective custody. At the time of booking, I had the arrest report. I asked him questions and the answers are reflected on the reports I generated during the booking process. Plaintiff stated he had "no problems" with people from Arkansas. Plaintiff state he wanted to go to the back with his friend (with whom he was arrested) because his friend had never been to jail before.

I did not know anything of the issue of the previous homicide. I had not placed anyone into administrative segregation before this point, and I am not sure if I ever did.

Officer Dahl was not present at the time of booking. Officer McDonald may have been

present.

I heard there was a fight in Max B about 10 to 15 minutes after Plaintiff went back to Max B. I called the nurse and described Plaintiff's injuries. Officer McDonald brought Plaintiff back to intake. Plaintiff was placed in the holding cell. He stated he did not know who had fought him. When asked why Plaintiff didn't tell me he had problems with people from Arkansas, he said it was not important. Travon Peoples was in holding 7, between two doors. Exhibit 5 is the confrontation report, it was filled out once he went to the hospital.

When Plaintiff came back to Miller County, he did not speak of the incident. Plaintiff spoke with the sheriff and warden to become a trustee, on his third incarceration in Miller County. I remember him as a trustee. Plaintiff never asked me for administrative segregation/protective custody. If he had asked, he would have been placed there. I was not aware of any risk to Plaintiff.

Texas and Arkansas inmates are mixed, and could have problems. I asked everything required to be asked at the time of booking. I can not print out the yellow card with comments, but there were not any holds or other comments placed there. The only separation of inmates is: federal, misdemeanor, felony, and graduated felony. There is no pre and post conviction separation. As a result of my training, I placed inmates in those designations. I completed a training course and a reserve deputy course.

### *Jason McDonald*

My name is Jerry "Jason" McDonald. I am a Deputy Sheriff. On March 2, 2007, the date in question, I was a Sargent in the jail. I oversaw the jail on my shift. When I was on duty I was "top person" there. We do not have a policy of separating Arkansas and Texas inmates.

I was over the administration of the jail. I was there on March 2, 2007 when the incident occurred. Dollie Simmons used my reference number for booking and training. I do not remember

having a conversation with the Plaintiff prior to booking. I can not remember Plaintiff asking for administrative segregation, if he had asked I would have investigated, asked questions, and found out more information to see if it was appropriate to place him in administrative segregation.

I did not know Plaintiff or about the homicide before he was booked into the Miller County Jail in March of 2007. I don't remember any past conversations. I know Travon Peoples from the jail, I don't remember if Plaintiff was ever incarcerated in the holding cell.

At the time of the altercation, I responded to the call. Plaintiff was at the door, he came out, I brought him up front. I don't remember any conversations about the fight. Fights are somewhat common, but I have never witnessed them. There is a video system for review, it is saved for a certain amount of time and then taped over. I reviewed this altercation on tape afterwards. I don't remember how long it lasted. On the tape you could see individuals striking Plaintiff. I believe Officer Dahl and myself responded to the incident. I don't remember booking Plaintiff. I don't remember where everyone [jail staff] was assigned on the day in question.

### *Donny Brian Dahl*

In March of 2007, I was a correctional officer with Miller County. My duties were to maintain the security of the facility, do cell checks, maintain inmates. I was not involved in the incident at issue until I arrived to take the Plaintiff to the hospital. I was on the west end, not max end of the facility when Plaintiff was assaulted. I was not in booking at the time of the conversation. I had not heard of Plaintiff before the incident. I was told to get a wheel chair, I got it while Plaintiff was moved to the front/booking area. I rode in the ambulance to the hospital, I did not speak with Plaintiff. Plaintiff was semi-conscious.

I created the incident report which is Defendants' Exhibit 4. Any statements or quotes by the Plaintiff to me would have been reflected in that report. When Plaintiff was in the ER, the nurse

called to send an officer and vehicle when done.  Officer McDonald came and picked up the Plaintiff and myself from the hospital.  I was walking around the facility for security at the time of the incident, and did not respond.

### *Demetrius Akkard, rebuttal*

There were two people in booking, other than me at the time I was booked into Miller County Jail.  I believe one was an officer who is now deceased, and one was a woman.  I know for certain I told Dollie Simmons I needed protective custody and I believe another lady knew because she overheard me while I was in the booking area.  I don't remember McDonald in the booking area at the time I made the statements, and I really don't have any evidence I told him I needed protection.

I was asleep during the initiation of the assault.  McDonald stated that possibly 15 people assaulted me.

## II. Discussion

Plaintiff claims his constitutional rights were violated when the Defendants failed to protect him from other inmates.  Plaintiff claims he told Defendants he needed protective custody, and they ignored his request and sent him to the general population of the jail.  Ten to Fifteen minutes after he was placed in the general population, Plaintiff was injured when an unknown number of inmates pulled him from his bunk, struck him, and caused him injury.

To prevail on his failure-to-protect claim, Plaintiff must to show deliberate indifference by proving that (1) an excessive risk to him was known or obvious to the defendants; and (2) the defendants recklessly disregarded that risk.  *See Jackson v. Everett,* 140 F.3d 1149, 1151-52 (8th Cir.1998).  In the context of the facts presented in this case, Plaintiff must show he told one of the Defendants he was not safe in the general population of the Miller County Detention Center.

As an initial matter, at the hearing, in his rebuttal testimony, Plaintiff stated he had no

evidence against Defendant McDonald and does not remember him being in booking at the time in question. Clearly, Defendant McDonald should be dismissed.

The remaining question is whether Defendant Simmons was informed of Plaintiff's need for administrative segregation/protective custody. The arrest and booking detail page (Defendants Exhibit 1) provides a place for noting "prot. cust." which, according to the testimony at the trial, meant protective custody. Here, Defendant Simmons answered "no." Additionally, Plaintiff admits he could not identify the persons he felt he needed protection from, although he stated he knew of the threat because he read in the newspaper those persons were incarcerated in Miller County. *See Robinson v. Cavanaugh,* 20 F.3d 892, 895 (8th Cir.1994) (per curiam) (finding that prison officials were not deliberately indifferent to the inmate's safety when they refused to place him in protective custody based solely on his general fear for his safety).

Travon Peoples, the Plaintiff's witness, was not credible. This witness' testimony was contradictory and difficult to understand or follow. It is uncertain, because of where he was located at the time of the interaction between Plaintiff and Defendants, how he could have adequately overheard the conversations in the booking area. Additionally, his testimony was inconsistent with that of Plaintiff concerning how many people were in booking at the time Plaintiff allegedly made any remarks. Moreover, it is also unclear how Mr. Peoples would have known that Plaintiff was in need of any protection. According to Mr. Peoples he had only "heard his name" in reference to the Plaintiff.

The testimony presented at the hearing established Plaintiff did not inform the Defendants of any specific need for protective custody. Plaintiff alleged he told the booking officer, Defendant Simmons, and the officer in charge at the time, Defendant McDonald he needed protective custody because he was involved in a homicide, and other involved persons were housed at the Miller County

Jail.  While clearly Plaintiff was injured while at Miller County Jail, he did not carry his burden to prove he had specifically warned the Defendants of his need for protective custody and that his life was in danger if taken to the general population.  The greater weight of the evidence shows no information was given to the Defendants on which they could act to protect Plaintiff.

      **IT IS SO ORDERED** this **8th  day of April 2009.**

                                                /s/ Barry A. Bryant  
                                                HON. BARRY A. BRYANT  
                                                U.S.  MAGISTRATE JUDGE